# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS J. SORIANO, | : | CIVIL NO. 1:13-CV-01333 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| CAPITAL BLUE CROSS, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM
May 27, 2016

## I. Introduction.

Before the Court is the Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Defendant's motion will be granted.

## II. Background.

### A. Procedural Background.

The plaintiff, Carlos Julio Soriano ("Soriano"), commenced this action by filing a *pro se* complaint (*doc. 1*) on May 15, 2013, against the defendant, Capital BlueCross ("Capital"), along with an application (*doc. 2*) to proceed *in forma pauperis*. We recommended that Soriano's application be granted and that his

complaint be dismissed, with leave to amend, based on his failure to comply with Rule 8 of the Federal Rules of Civil Procedure. *See doc. 5*. Chief Judge Conner adopted our recommendations and granted Soriano's application to proceed *in forma pauperis*, but dismissed his complaint without prejudice. *See doc. 7*. Recognizing that Soriano filed an amended complaint after we issued our Report and Recommendation (*see doc. 6*), Chief Judge Conner granted Soriano leave to file a second amended complaint and remanded the matter back to the undersigned for further proceedings. *See doc. 7*.

Thereafter, Soriano filed a second amended complaint (*doc. 8*), and Capital filed its answer and affirmative defenses (*doc. 13*) thereto. Following the January 29, 2015, case management conference, and entry of the corresponding case management order (*doc. 23*), the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (*see docs. 24*, *25*). After the close of the discovery period, Capital filed, on September 4, 2015, its motion (*doc. 31*) for summary judgment. The motion, having been fully briefed, is ripe for disposition.

## B.  Statement of Facts.[1]

### 1. Soriano's Employment at Capital.

Soriano was employed by Capital as a custodian from approximately March 9, 1992, until his termination on February 13, 2012.   *Doc. 33* at ¶ 1.   Soriano's supervisor, from 1994 through his termination, was Steve Baker ("Baker").   *Id.* at ¶ 2.   Soriano was also supervised by Todd Burkholder ("Burkholder") and Larry Schlegel, both of whom reported to Baker.   *Id.* at ¶ 3.  Burkholder was a supervisor of Soriano from September 1994 until Soriano's discharge on February 13, 2012.   *Id.* at ¶ 4.

---

[1] Pursuant to the Local Rules for the U.S. District Court for the Middle District of Pennsylvania, a party moving for summary judgment must attach to the motion "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. The non-moving party is required to submit "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in [the moving party's statement of the material facts], as to which it is contended that there exists a genuine issue to be tried." *Id.*  Both statements must reference the record for support, and the moving party's statement will be deemed admitted unless controverted by the non-moving party.  *See id.*  Here, Capital, as the moving party, has filed a statement of material facts (*doc. 45*), supported by adequate references to the record.   Although Soriano, as the non-moving party, has filed a brief in opposition to Capital's motion for summary judgment, Soriano has failed to submit a statement of material facts, responding to the numbered paragraphs set forth in Capital's statement of material facts.  As such, we will adopt Capital's statement of material facts. *See United States ex rel. Paranich v. Sorgnard*, 286 F. Supp. 2d 445, 447 n.3 (M.D. Pa. 2003) (adopting moving party's statement of facts where non-movant failed to comply with Local Rule 56.1), *aff'd*, 396 F.3d 326, 330 n.5 (3d Cir. 2005); *see also Larnerd v. Mong*, No. 1:14-CV-1204, 2015 WL 5601949, at *2 (M.D. Pa. 2015) ("A party's failure to comply with Local Rule 56.1 permits the court to deem the proponent's statement of material facts undisputed, even when the opposing litigant is *pro se*.").

Soriano received a copy of Capital's personnel policies, which are set forth in its Employee Handbook and include:

> a. an Equal Employment Opportunity/Affirmative Action policy, which prohibits discrimination on the basis of race, color, national origin, or any other legally protected characteristic;
>
> b. a Harassment policy, which prohibits harassing conduct based on race, color, national origin, or any other protected characteristic, as well as acts intended to intimidate an employee, and establishes a reporting procedure for employees to report concerns of harassment;
>
> c. a Non-Retaliation policy, which prohibits retaliation against any employee who makes a good faith report about harassment or a violation of the law, but provides that it "does not excuse an employee from the consequences of his or her own improper behavior or inadequate performance";
>
> d. a Workplace Violence policy that contains a reporting procedure for concerns of threatening, intimidating and/or violent behavior in the workplace; Case 1:13-cv-01333-SES Document 33 Filed 09/04/15 Page 4 of 125
>
> e. a Code of Conduct, which reiterates the prohibition against threats, physical, verbal or written intimidation, assaults or harassment, and provides a reporting procedure for employees to report concerns of any such conduct; and
>
> f. a Work Problems policy, which makes clear that Capital does not tolerate false internal reports of misconduct.

*Id.* at ¶¶ 9, 10. Soriano was aware of the provisions and reporting procedures set forth in the Harassment and Work Problems policies. *Id.* at ¶ 10.

During his employment, Soriano received numerous disciplinary actions and counseling from his supervisors, including discipline for engaging in harassing,

4

threating, and/or unprofessional conduct towards employees, and counseling relating to his interactions with co-workers, and behaving in an aggressive and/or threatening manner towards them. *Id.* at ¶ 11. Moreover, during his employment, many of Soriano's annual reviews rated his interactions with co-workers as "unacceptable" or "needs improvement," including, Soriano's performance reviews from 1996, 2002, 2005, 2006, 2007, 2010, and 2011. *Id.* at ¶ 12.

In, or about, September 2011, Capital's Human Resources Department ("HR"), received and investigated a report made by Soriano regarding a conflict with a co-worker, Tony Miller ("Miller"). *Id.* at ¶ 13.[2] Based on its investigation, including eyewitness accounts that contradicted Soriano's report and indicated that Soriano had initiated the conflict with Miller, Capital concluded that the report was not only unsupported, but it was misleading and did not appear to have been made in good faith. *Id.* at ¶ 14. Neither Baker nor Capital's Director of Staffing and Employee relations, Tim Angelo ("Angelo"), are aware of a single occasion where Miller made false or misleading reports about co-workers to HR. *Id.* at ¶ 15.

In or about December 2011, HR investigated a report made by Soriano against another co-worker, Custodian Steve Brim ("Brim"), who Soriano complained was staring at him, "in his space," and "stalking him." *Id.* at ¶ 16.

---

[2] As proffered by Capital, this conflict involved an alleged incident, whereby Soriano claimed Miller made a fist and threatened to punch him. *Doc. 33* at ¶ 13, n.2.

Soriano did not identify any witnesses to this incident. *Id.* at ¶ 17. Nevertheless, Angelo investigated and interviewed Brim. *Id.* Brim's version of the events was inconsistent with Soriano's version—Brim explained that his path occasionally crossed with Soriano's during performance of their respective duties and that he tried to avoid confrontation with Soriano because Soriano instigates conflict with co-workers. *Id.* at ¶ 18. After the investigation, HR concluded that Soriano's report against Brim was unsupported. *Id.* at ¶ 19.

As part of the investigation into Soriano's reports regarding Miller and Brim—which were found to be misleading and unsupported, respectively—Angelo reviewed Soriano's employment records, including his disciplinary actions and counseling, performance reviews, and supervisory records relating to past internal complaints made by Soriano about his co-workers' conduct and vice versa. *Id.* at ¶ 20. Based on the results of HR's investigation and Soriano's record of generating conflict with co-workers and making misleading and/or unsupported complaints, Capital issued Soriano a Final Written Warning ("Final Warning"). *Id.* at ¶ 21. In Soriano's Final Warning, Capital explained the investigation and findings into his internal reports, the reasons for the disciplinary action, and Capital's expectation of Soriano's conduct in the future. *Id.* at ¶ 22.

On or about December 28, 2011, Angelo and Baker met with Soriano to deliver the Final Warning, during which Angelo:

a. reviewed the steps HR took to investigate his reports about Miller and Brim and explained the findings of those investigations;

b. told Plaintiff that eyewitnesses he had identified did not support his version of events and instead said that Plaintiff was the one who instigated the incident;

c. explained that he had reviewed Plaintiff's employment records, which showed that Plaintiff had a history of making complaints about co-workers that were found to be misleading and/or unsupported;

d. told Plaintiff that he was not discouraging him from reporting genuine concerns and reiterated that Plaintiff, like every other employee, is encouraged to report valid concerns to Capital;

e. told Plaintiff, in response to Plaintiff stating that he would "just have to go back to the feds," that he had the right to do so;

f. explained the difference between valid complaints and complaints that are without substance;

g. counseled Plaintiff that Capital could not tolerate repeated unsubstantiated complaints from him or any other employee, or, worse, complaints that are investigated and reveal that he is the one instigating the behavior;

h. gave Plaintiff a copy of the Final Written Warning, which Plaintiff read; and

i. warned Plaintiff that Capital would not tolerate a continuing pattern of instigating conflict with his co-workers, and that he could be terminated if he continued to engage in this conduct.

*Id.* at ¶ 23.  Although Soriano refused to sign the Final Warning, he expressed his understanding of its contents and the discussion at the meeting.  *Id.* at ¶ 24. Neither Angelo, nor Baker, told Soriano that he would be fired if he filed another

complaint with the Pennsylvania Human Relations Commission ("PHRC"). *Id.* at ¶ 25.  In fact, the Final Warning stated that Capital did "not want to discourage [Soriano] or, for that matter, any other employee from reporting legitimate concerns to management or to Human Resources . . . ." *Id.* at ¶ 26.  Based on his receipt of the Final Warning, Soriano filed another PHRC complaint, which the PHRC served on Capital on January 13, 2012. *Id.* at ¶ 27.

On February 7, 2012, Senior Director of HR Kieran Hull ("Hull") received a report from Custodian Alemayehu Gizaw ("Gizaw"), who raised complaints and concerns about Soriano's conduct towards his co-workers. *Id.* at ¶ 28.  Hull instructed Angelo to investigate Gizaw's report, which included complaints that Soriano generated conflict with and scared co-workers. *Id.* at ¶ 29.  Thereafter, Angelo investigated Gizaw's report, interviewing Baker and two of Soriano's female co-workers:  Wezenet Mebrahtu and Champaben Athia. *Id.* at ¶ 30.  After the investigation, HR reviewed the co-worker's statements and Soriano's employment record, including the Final Warning, and concluded that Soriano had continued to engage in conduct that generated conflict with, and was threating and intimidating towards, his co-workers. *Id.* at ¶ 31.  HR concluded that Soriano's conducted violated the terms of his Final Warning and Capital's policies and, for these reasons, terminated Soriano's employment on February 13, 2012. *Id.* ¶ 32.

8

Soriano's previous filings of PHRC complaints were not considered in the decision to terminate him for his continued misconduct. *Id.* at ¶ 33.

### 2. Soriano's Complaints with the Pennsylvania Human Relations Commission.

Between 2008 and 2012, Soriano filed four complaints with the PHRC. *Id.* at ¶ 5. All of Soriano's PHRC complaints (with the exception of one that he voluntarily withdrew) were dismissed for lack of probable cause of unlawful discrimination and/or retaliation, as follows:

a. Soriano filed his first PHRC Complaint ("PHRC I") on April 9, 2008 (case no. 200704812), asserting claims of ancestry-based harassment attributed to Burkholder and Baker; denial of promotion based on ancestry; denial of transfer based on age; and denial of a bonus based on ancestry. The PHRC dismissed PHRC I for lack of probable cause on or about January 16, 2009.

b. Soriano filed his second PHRC Complaint ("PHRC II") on October 11, 2008 (case no. 200802424), asserting two retaliation claims based on his receipt of a verbal warning for placing recyclable materials in the trash and a written warning for threatening a supervisor. Soriano voluntarily withdrew PHRC II on February 27, 2009.

c. More than three years after filing PHRC II, Soriano filed his third PHRC Complaint ("PHRC III") on December 29, 2011 (case no. 201103326), asserting a single claim of retaliation based on his receipt of a Final Written Warning, discussed infra. The PHRC dismissed PHRC III for lack of probable cause on or about September 26, 2012, and the EEOC adopted the PHRC's findings on April 22, 2013.

d. Soriano filed his fourth PHRC Complaint ("PHRC IV") on February 14, 2012 (case no. 201104160). The PHRC dismissed

> PHRC IV for lack of probable cause on September 26, 2012, and
> the EEOC adopted the PHRC's findings on April 17, 2013.

*Id.* at ¶ 6.

### 3. Soriano's Complaint in this Court.

Soriano initiated this lawsuit by filing a Complaint on May 15, 2013,
followed by a second amended complaint on July 25, 2013, in which he sets forth a
single count of "Retaliation-Discrimination," claiming that:

> a. he was discharged because he filed a complaint with the
> Pennsylvania Human Relations Commission – i.e., PHRC III (*Doc.
> 8*, ¶ 3; *see also* App. Ex. A, pp. 247-72); Case 1:13-cv-01333-SES
> Document 33 Filed 09/04/15 Page 3 of 124
>
> b. from hire, he "was humilated [sic] and discriminated against"
> but admittedly "didn't do anything about it" (Doc. 8, ¶ 4; *see also*
> App. Ex. A, pp. 129-30, 191-212);
>
> c. a co-worker, Custodian Miller, "harass[ed]" Plaintiff, "threatened
> me physically and verbally" and "threatened me that I better get out
> of this company or I will get hurt" (Doc. 8, ¶ 4; *see also* App. Ex.
> A, pp. 166- 87, 241-42); and
>
> d. he was discharged, "because [he is] a Latino person." (*Doc. 8*, ¶
> 4; *see also* App. Ex. A, pp. 247-54.)

*Id.* at ¶¶ 7-8

Although Soriano declined to conduct any discovery, and has indicated that
the PHRC Investigator is the only witness he intends to seek to support his claims,
Capital conducted written discovery and took Soriano's deposition.  *Id.* at ¶¶ 34-
35.

### III. Summary Judgment Standards.

Capital moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality."  *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.  Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-

moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex*, 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the

motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

Further, a party that moves for summary judgment on an issue for which he bears the ultimate burden of proof faces a difficult road. *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011). "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted). A party who has the burden of proof must persuade the factfinder that his propositions of fact are true, and "if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id.* "Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *Id.*

## IV. Discussion.

Soriano's second amended complaint includes one count of "Retaliation-Discrimination." *Doc. 8* at 1.   Under this count, Soriano alleges that "from the time [he] was hired [he] was humilated [sic] and discriminated against," "threatened physically and verbally," and "harass[ed]." *Id.* at 2, 4.   Soriano further alleges that he was terminated for filing PHRC III and "for being a Latino person." *Id.* at 2-3, 4.   In accordance with the liberal pleading standards that are extended to *pro se* litigants, we treat Soriano's second amended complaint as raising claims for discrimination, harassment, and retaliation under both the PHRA and Title VII.[3]

### A. Soriano's Discrimination and Retaliation Claims.

We address Soriano's discrimination and retaliation claims under the burden-shifting framework that the Supreme Court has outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   This framework has three steps: First, Soriano bears the burden of establishing a *prima facie* case of discrimination or retaliation; second, if Soriano establishes a *prima facie* case, then the burden of production shifts to Capital to present a legitimate, non-discriminatory or non-

---

[3] Although Soriano relies on two distinct statutory bases, we consider, and discuss, his claims for discrimination, harassment, and retaliation together, under the same standards. *See Atkinson v. Lafayette College*, 460 F.3d 447, 454 n. 6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims.").

retaliatory reason for its conduct; and third, if Capital advances such a reason, then the burden shifts back to Soriano, who must demonstrate that Capital's proffered reason was false, and that discrimination or retaliation was the real reason for his termination. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (discrimination); *Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 320 (3d Cir. 2008) (retaliation).

### 1. Soriano Cannot Sustain a *Prima Facie* Case of Discrimination.

To make a *prima facie* showing of race or national origin discrimination, Soriano must demonstrate that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *See Sarullo*, 352 F.3d at 797. Capital concedes that Soriano is Latino and that Soriano was terminated. *Doc. 34* at 16. Capital argues, however, that Soriano cannot prove that he was terminated under circumstances which give rise to an inference of discrimination. *Id.*

Here, even viewing all of the facts and the reasonable inferences therefrom in the light most favorable to Soriano, we nevertheless find that he has failed to establish a *prima facie* case of discrimination. Soriano has provided nothing, other than his own conclusory statements contained in his pleadings and brief, to

oppose Capital's motion for summary judgment.  *See Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985) (explaining that arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion").  Soriano's own personal belief that he was terminated because he is "a Latino," without more, is simply insufficient to create a genuine issue of material fact for purposes of summary judgment.  *See Ade v. KidsPeace Corp.*, 401 F. App'x 697, 703 (3d Cir. 2010) ("[Employee's] own personal belief that the true reason for the discharge was racial discrimination is similarly insufficient to create a genuine issue of material fact.").

Further, even assuming Soriano established a *prima facie* case of discrimination, Capital has identified a legitimate, nondiscriminatory reason for Soriano's termination.  Specifically, Capital proffers that Soriano was terminated for violating the terms of his Final Warning, as well as Capital's policies.  *Doc. 34* at 22-23.  Not only does the evidence of record support Capital's legitimate, nondiscriminatory reason for Soriano's termination—i.e, that Soriano engaged in the very type of misconduct that Capital warned Soriano would get him terminated (*see doc. 33* at 11, ¶ 32; *doc. 32* at 278-80, ¶¶18-23)—but, moreover, Soriano has not proffered any evidence that would discredit, or otherwise permit, a reasonable

factfinder to conclude that Soriano was terminated under circumstances that give rise to an inference of discrimination.

Thus, because Soriano has not established a *prima facie* case of discrimination, nor has he shown that Capital's proffered reason was pretext for discriminatory termination, we find that summary judgment is warranted in favor of Capital as to Soriano's discrimination claims.

### 2. Soriano Cannot Sustain a *Prima Facie* Case of Retaliation.

In order to establish *a prima facie* case of retaliation, Soriano must show that (1) he engaged in protected activity under Title VII; (2) Capital took an adverse action against him; and (3) there was a causal connection between his protected activity and the adverse employment action. *Wilkerson*, 522 F.3d at 320.

Capital does not dispute that Soriano engaged in a protected activity, nor does Capital dispute that Soriano's termination constituted a materially adverse action. *Doc. 34* at 18-22. Rather, Capital centers its argument on whether the evidence is sufficient to demonstrate a causal connection between the filing of Soriano's PHRC III complaint, which was served on Capital on January 13, 2012, and his subsequent termination, which followed 30 days later on February 13, 2012. *See id.* More specifically, Capital argues that this 30-day time period does not constitute an unusually suggestive temporal proximity. *Id.* at 19. And, in the

absence of any other evidence suggesting retaliation, Capital further argues that timing alone cannot establish causation. *Id.*

A causal connection can be established in a number of ways. *Bailey v. Commerce Nat. Ins. Servs.*, Inc., 267 F. App'x 167, 170 (3d Cir. 2008). First, temporal proximity between the employee's protected activity and the adverse employment action can serve as circumstantial evidence "'sufficient to raise the inference that [the employee's] protected activity was the likely reason for the adverse action.'" *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (quoting *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990)). Absent temporal proximity, "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." *Kachmar*, 109 F.3d at 177 (quoting *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993)). Temporal proximity and a pattern of antagonism, however, are not the only means to prove causation; the proffered evidence, looked at a whole, may be sufficient to raise an inference that the employee's activity was likely the reason for the adverse action. *Kachmar*, 109 F.3d at 177.

Here, we find—once again—that Soriano has provided nothing, other than his own conclusory statements contained in his pleadings and brief, to oppose Capital's motion for summary judgment. Moreover, the 30-day gap between the

filing of Soriano's PHRC III complaint and his termination is not, on its own, unusually suggestive of causation.  Indeed, the United States Court of Appeals for the Third Circuit has "found that [although] a temporal proximity of two days is unusually suggestive of causation, *see Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (reversing summary judgment for the defendant when plaintiff was fired two days after his employer received notice of his EEOC complaint), . . . a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive, *see Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (finding that 'where the temporal proximity is not so close as to be unduly suggestive,' the appropriate test is 'timing plus other evidence')." *Gairloch v. Pennsylvania State Univ.*, 84 F. Supp. 3d 407, 418-19 (M.D. Pa. 2015) (quoting *Blakney v. City of Philadelphia*, 559 Fed. Appx. 183, 186 (3d Cir. 2014) (Hardiman, J.)) (quotation marks omitted).  Soriano, however, has not produced supplementary evidence of retaliatory motive.  *See generally Erbe v. Potter*, No. 1:08-CV-0813, 2010 WL 1052947, at *4 (M.D. Pa. Mar. 22, 2010) ("'Among the kinds of evidence that a plaintiff can proffer are intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus.'" (quoting *LeBoon*, 503 F.3d at 232); *see also Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014) ("'[T]he

20

mere fact that adverse employer action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events.'" (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997), *abrogated on other grounds*, *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 60 (2006))). Thus, absent a showing of temporal proximity or a pattern of antagonism following the protected conduct, we must analyze the record as a whole to determine whether the proffered evidence raises an inference that the filing of Soriano's PHRC III complaint was likely the reason for his termination.

In analyzing the record, we find that the proffered evidence does not raise such an inference. Although Soriano vaguely alleges in his second amended complaint that he was warned that he would be terminated if he filed another PHRC complaint (*doc. 8* at 2, ¶ 3), Soriano subsequently testified at his own deposition that neither Baker nor Angelo told him to stop filing PHRC complaints. *Doc. 32* at 87:11-89:5 Soriano further testified that neither Baker nor Angelo wanted to discourage him from reporting legitimate complaints. *Id.* at 88:6-89:5. Soriano's testimony is confirmed by Angelo and Baker, who both declared that they never told Soriano that he would be terminated if he filed another PHRC complaint. *See id.* at 280, ¶ 25 (Angelo); *id.* at 359, ¶ 12 (Baker). And, in fact,

Soriano's Final Warning refutes that he would be terminated for reporting legitimate employment concerns. The Final Warning, in pertinent part, reads:

> While we do not want to discourage you or, for that matter, any other employee from reporting legitimate concerns to management or to Human Resources, we will not tolerate repeated unsubstantiated complaints from you or any other employee.

*Id.* at 183.

Thus, we find that the record, as a whole, does not show that a causal connection exists between the filing of Soriano's PHRC III complaint and his termination. Even assuming that Soriano could establish a *prima facie* case of retaliation, Soriano has not proffered any evidence that would discredit, or otherwise allow, a reasonable factfinder to conclude that Capital's proffered reason for termination was pretext for retaliatory termination. As such, summary judgment is warranted in favor of Capital with respect to Soriano's retaliation claims.

### B. Soriano's Hostile Work Environment/Harassment Claims.

In order to prevail on a hostile-work-environment claim, Soriano must establish (1) that he suffered intentional discrimination because of a protected characteristic, (2) that the discrimination was severe or pervasive; (3) that the discrimination detrimentally affected him; (4) that the discrimination would have detrimentally affected a reasonable person of like characteristics in like

circumstances; and (5) the existence of *respondeat superior* liability. *See Huston v. Proctor & Gamble Paper Products Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). For workplace harassment to be actionable, it must be sufficiently severe or pervasive as to alter the conditions of the plaintiff's employment and create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *see Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank,* 477 U.S. at 65, 67) ("When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated.") (internal citations omitted).

In moving for summary judgment on Soriano's hostile work environment claim, Capital argues that Soriano's allegations do not establish that Soriano suffered intentional discrimination because of a protected characteristic. *See doc. 34* at 25-29. Capital further argues that Soriano's allegations do not establish that the alleged discrimination was severe or pervasive. *See id.*

We find—yet again—that Soriano provides nothing, other than his own conclusory statements, to oppose Capital's motion for summary judgment. Further, the evidence of record, as adduced by Capital, suggests nothing more than casual and sporadic incidents of clashing personalities. *See Fairclough v. Wawa, Inc.*, 412 F. App'x 465, 469 (3d Cir. 2010) ("That [plaintiff] experienced

personality conflicts resulting in a less than ideal work environment is simply not actionable under Title VII."); *Harris v. SmithKline Beecham*, 27 F.Supp.2d 569, 578 (E.D. Pa. 1998) ("A plaintiff cannot rely upon casual, isolated, or sporadic incidents to support her claim of hostile work environment harassment." (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (1990)).  For instance, at his deposition, Soriano testified that Miller created a hostile work environment because Miller: "stalk[ed]" him; (*doc. 32* at 22:13-23:2); tried to "bump" into him (*id.* at 31:12-16); gave him "dirty looks and stuff like that" (*id.* at 23:6-13); threatened him (*id.* at 24:14-23), including making a fist, like he was going to punch him (*id.* at 28:15-13); gave him the finger "three times" (*id.* at 25:5-20); cussed and swore on the phone (*id.* at 32:4:-16); and walked on Soriano's mopped and "wet floors and stuff like that" (*id.* at 27:11-23).   Although Miller's alleged behavior may have been unprofessional, and at times, confrontational, Soriano has not adduced any evidence to support his contention that this alleged behavior was in any way related to his race.  Accordingly, summary judgment is also warranted in favor of Capital with respect to Soriano's hostile-work environment claim.

## V. Conclusion. [4]

Accordingly, for the foregoing reasons, Capital's motion (*doc. 31*) for summary judgment will be **GRANTED**.  An appropriate implementing order follows.


*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

---

[4] Given our foregoing findings, we need not address Capital's remaining arguments as they relate to the timeliness and exhaustion of Soriano's PHRC complaints.  *See doc. 34* at 13-14.